## BANKERS TRUST COMPANY, GUARDIAN OF OLGA G. HAMSTEAD, v. C. E. HAMSTEAD, et al.

Eastern Section.   May 22, 1926.

Petition for Certiorari denied by Supreme Court, October 12, 1926.

1. **Guardian and ward. The responsibility of a guardian security is not an office to be resigned.**

    Sections 5442 to 5446, of Shannon's Code, prescribe the mode of proceeding by which sureties of a guardian may be released and there is no other way.

2. **Principal and surety. Surety of a guardian continues responsible for acts of his principal until his successor is appointed and qualified.**

    A surety on a guardian's bond cannot be discharged from liability until his successor is appointed and qualified according to law.

3. **Principal and surety. A resignation filed by the surety can be acted upon only as prescribed by statute.**

    In an action on a surety bond where the surety came into court and filed a resignation which was followed by an order of the court releasing him, held, that the order was void upon its' face and since the parties had not complied with the statute to release the surety, the surety was liable.

4. **Guardian and ward. A guardian has no power without the direction of the court of chancery to convert realty into personalty, or vice versa or to convert either into money or vice versa.**

    In an action by a guardian of a ward against the former guardian and his sureties for an accounting where it was shown that the guardian had taken the ward's insurance money and invested it in a house without an order of the court to do so, held, that the application of the funds to the purchase of a house, even though the deed to same was taken in the name of his ward, was a misappropriation and an unlawful and unauthorized investment of the funds and the guardian was liable to account therefor.

5. **Guardian and ward. Act of new guardian in selling property bought by previous guardian held not a ratification of the purchase.**

    Where a new guardian was appointed and immediately obtained an order of court and sold property bought by a previous guardian without authority of court, held, not a ratification of the purchase, but an expressed disapproval.

6. **Guardian and ward. Order of court selling property held not a violation of rights of prior guardian.**

Where a new guardian was appointed and obtained an order of court and advertised and sold property bought by a prior guardian without authority of court, **held,** no injury was done the guardian or his bondsmen of which they can complain. It was the right and duty of the court to dispose of an investment that was standing in the way of her proper education and support, and the defendants can not complain, being responsible for its being foisted upon the estate.

Appeal from Chancery Court of Knox County; Hon. Chas. Hays Brown, Chancellor.

Decree affirmed.

J. Alvin Johnson, of Knoxville, for appellant.

A. E. Mitchell, of Knoxville, for appellee.

SNODGRASS, J.   This is a suit by the complainant, the present guardian of Olga G. Hamstead, to recover of her former guardian and his bondsmen, R. L. and T. L. Peters, money alleged to be in his hands, and for which he failed to settle or account.

The bill alleges that the defendant (who was the father of his ward) was on April 22, 1920, appointed guardian and had qualified as such with the usual statutory bond in the sum of $2000, with the defendants, the Messrs Peters signing the same as bondsmen and, substantially, that he had received as such guardian from Government insurance the sum of $2642.15 belonging to his ward; that of said sum he used for the support of his said ward the sum of $600, leaving a balance of $2042.15, for which he had never accounted; that he, the guardian, had wrongfully and unlawfully failed to account for the funds and money of his ward so received by him, and that he had converted the same to his own use; that he misappropriated same; that he has never made settlement with the county court clerk of Knox county, Tenn., as required by law, and that he and the defendants R. L. and T. L. Peters, sureties on his guardianship bond, are liable to and indebted to the said Olga G. Hamstead in the sum of $2042.15; that by appropriate proceedings in the County Court of Knox county, Tenn., the said C. E. Hamstead, as guardian of the said Olga G. Hamstead, was commanded to make report and settlement as guardian, but that he failed and refused to do so.

That on or about February 2, 1924 a petition was filed in the county court seeking to have the defendant C. E. Hamstead removed as guardian, upon the ground that he had wasted the funds belonging to his ward, and had misappropriated them and converted the same to his own use; that he had been guilty of willful and unlawful mismanagement in connection with the affairs of his said ward, had been frequently arrested and confined in jail for drunkenness and used the money of his ward to pay fines and costs in criminal cases insti-

tuted against him; that he had neglected the education of his ward, and had failed to maintain and support her.

It was averred that the allegations in the petition were heard and sustained by the county court of Knox county, the said guardian removed, and that complainant was appointed her guardian by the county court of Knox county; that it, a corporation, gave bond, qualified and was acting as such guardian.

The bill sought a decree against the defendants for the said balance aforesaid, or for any amount that might be due, to ascertain which all necessary reference was asked, coupled with a prayer for general relief.

The answer of defendant Hamstead was filed, in which it was admitted that he qualified with the securities and bond alleged, and at the time, April 22, 1920; that he had received on November 3, 1920, the sum of $499.65 from the Government, as proceeds of a ten thousand dollar insurance policy on the life of her brother, who had died as a soldier after the armistice in the late war, leaving his said ward as the beneficiary of said policy, and that he had received the sum of $57.50 per month monthly thereafter.

It was denied that of this amount he used only $600 for her support, or that he had wasted the funds, misappropriated or converted any of the same to his own use, or that he had been guilty of gross, willful or unlawful mismanagement of the funds or of the affairs of his said ward, or that he had failed or neglected to provide for or educate her.

It was claimed that on May 2, 1921, and on April 28, 1922, he had made settlement with the court, as shown by the records, that subsequent to said last date he had expended for the care, education, support and maintenance of his said ward funds for which he was entitled to credit.

It was averred that on or about April 28, 1923, he had an opportunity to purchase certain real estate on North Broadway, thought desirable for reasons stated, at the price of $3750, and that he had invested the funds of his ward in such property, on such terms that the monthly income would readily and easily have actually paid for said property and left enough for the upkeep, education and support of his ward; that he believed then, and now believes, that the court would readily have approved of the purchase.

He averred that up to his removal as guardian, or the appointment of complainant, the payments had been met, and that the complainant, after its qualification as guardian, had filed a bill, to which respondent had not been made party, against the ward, and that complainant in that suit had made it appear that it was for the best interest of the minor to dispose of said property, and that without regard to the fact that the minor's said estate would have been enhanced by completing said purchase, and in its desire to convert said estate into cash caused

said property to be sacrificed at the sum of $2500, when the proof in said cause, to which probably the court's attention was not drawn, showed that said property was in fact worth at that time $3500. It was therefore pleaded and insisted that complainant was estopped from asserting that the ward's funds were not wisely invested in said property, and that said purchase had not thus and thereby been ratified in any event and it was denied that he was indebted to complainant or complainant's ward in any sum whatever.

The answer of the bondsmen admitted the appointment of Hamstead as guardian, and that they signed the bond in the sum of $2000 as his sureties, and that complainant, being authorized, qualified on or about the time alleged as guardian of the said ward. The petition for the removal and proceedings were not admitted.

The title of the ward to the insurance was admitted, though the amount received by the principal was not admitted, nor was it admitted that $600 was only what he had paid out for which he was entitled to credit. And it was denied there was due a balance of $2042.15.

It was further denied that the principal had never accounted for said sum of $2042.15, and in that connection it was averred that Hamstead was present in the county court at various times and did offer to account for all the money coming into his hands. It was denied that he had converted said sums to his own use, or that he had misappropriated the same, or that he had never made settlement with the county court clerk as required by law, or that he had failed or refused to make settlement with the county court, or that these respondents or C. E. Hamstead are liable to said ward or her present guardian in the sum of $2042.15.

While they did not admit that complainant was authorized to institute the suit to recover from these defendants any amount, or that these respondents were indebted to his said ward in any amount, it was averred that when this complainant became guardian of the said ward there was then in the name of said Olga G. Hamstead ample and sufficient property to secure and protect all funds which had come into the hands of her said guardian, C. E. Hamstead, which had not been already expended by him in her support and maintenance. In this connection it was averred that C. E. Hamstead, while acting in good faith and according to his best judgment, put practically all of said funds which had thus come into his hands as guardian, excepting so much thereof as he had expended for the care, support and maintenance of his said ward, together with upwards of $500 of his own funds, into a house and lot on North Broadway, in Knoxville, Tenn., which he purchased at a price of $3750, on such terms that the payments thus coming to said ward would easily pay for said property; that said property was reasonably worth the amount he thus paid for the same; that said payments were not in default at

the time said C. E. Hamstead was removed as such guardian, and that this complainant immediately upon qualifying as guardian of said Olga G. Hamstead filed a bill in this court, styled Bankers Trust Co. v. Olga G. Hamstead, et al., being No. 20068 on the Rule Docket of this court, and forced said property to sale under such conditions and on such terms that the minor's equity therein was sacrified, and these respondents plead that complainant in thus so doing has estopped itself and is now precluded and estopped from asserting that the same was not thereby ratified in any court.`

It was further averred that on May 2, 1921, defendant Hamstead, as guardian, filed a report and settlement, which was recorded in the office of the county court clerk of Knox county, Tenn., . . . and that on April 28, 1922, the said Hamstead as guardian filed another report in said office; that both these reports were recorded, and that on the 14th day of February, 1923, an order was made by the county court of Knox county, Tenn., and entered on the records in the county clerk's office in Minute Book No. 5, page 638, in the following words and figures, to-wit:

"R. L. Peters, one of the bondsmen of C. E. Hamstead, guardian of Olga G. Hamstead, came and tendered his resignation as such bondsman, which is accepted, and he is released from further liability thereon. It was averred that the said respondent R. L. Peters is not liable on said bond for any funds coming into the hands of respondent C. E. Hamstead as such guardian thereafter, and that the respondent R. L. Peters is not liable to said Olga G. Hamstead or the complainant in this cause on account of said bond in any sum in excess of the amount due said ward on February 14, 1923, after allowing said C. E. Hamstead guardian the credit for the money paid for the care, support and maintenance of his said ward on that account in any event.

They further aver that within a few days after respondent R. L. Peters was thus released and discharged from liability by reason of having signed said bond, the respondent T. L. Peters, in person advised the county court clerk of Knox county, Tenn., that he likewise wished to resign as bondsman for said C. E. Hamstead, guardian; that the county court clerk advised or requested the respondent T. L. Peters to have said guardian to come to the office of the county court clerk; that respondent T. L. Peters brought the said C. E. Hamstead guardian into the office of the county court clerk for the purpose of said guardian making his settlement; that said C. E. Hamstead had then in his possession all of the funds coming into his hands as such guardian, excepting alone the amount thereof used by him in the care, support and maintenance of his said ward; that the respondent T. L. Peters on that occasion again advised the county court clerk that he wished to resign from all further liability as bondsman of said C. E. Hamstead, guardian; that said C. E. Hamstead guardian

on that occasion offered to make settlement with the county court clerk; and this respondent presumed that said instrument had been made and said C. E. Hamstead had been discharged as such guardian.

It was also averred and plead that by releasing his co-surety, R. L. Peters, as hereinbefore shown, and pleaded, and by virtue of his action in thus resigning as bondsman of said Hamstead, and in bringing said Hamstead guardian into the office of the county court clerk, the respondent T. L. Peters was thus and thereby discharged and relieved from all further liability as bondsman of said Hamstead guardian, and that the respondent T. L. Peters is not liable to said Olga G. Hamstead or complainant in this cause for any amount in excess of the funds then in the hands of said Hamstead guardian, after allowance is made for the funds expended by him for the care, maintenance and support of his said ward on that account in any event.

Upon the issues thus formed and narrowed, proof was taken and the cause heard by the chancellor, who embodied his findings in the decree entered November 13, 1925, as follows:

"This cause came on to be heard before the Hon. Chas. Hays Brown, chancellor, upon the original bill of the complainant Bankers Trust Company, guardian of Olga G. Hamstead, the answers of the defendants C. E. Hamstead, R. L. Peters and T. L. Peters, the proof and exhibits thereto, and the entire record in the cause, and upon argument of counsel. From consideration of all of which it appears and the court doth order, adjudge and decree:

I. That on April 22, 1920, the defendant C. E. Hamstead, father of Olga G. Hamstead, was appointed guardian of the said Olga G. Hamstead by the county court of Knox county, Tennessee, and that he qualified as such guardian by executing bond in the penalty of $2000 with the defendants R. L. Peters and T. L. Peters sureties thereon. That on February 2, 1924, the said Olga G. Hamstead by her sister and next friend, Mrs. C. R. Kirby, filed a petition in the county court of Knox county, Tennessee, to have the defendant C. E. Hamstead removed as guardian of the said Olga G. Hamstead. That upon the hearing of said petition in the county court of Knox county, Tennessee, the defendant C. E. Hamstead was removed as guardian of the said Olga G. Hamstead because he had wasted funds and money belonging to said Olga G. Hamstead, had misappropriated funds and money belonging to his ward and had converted the same to his own use, and because he had been guilty of gross, willful and unlawful mismanagement in connection with the affairs of his ward the said Olga G. Hamstead. That he had neglected the education of his said ward and failed to maintain and support her.

II. That prior to his appointment as guardian of the said Olga G. Hamstead, the said defendant C. E. Hamstead had a son, Orville A. Hamstead, brother of the said Olga G. Hamstead, who served as a

soldier in the United States Army during the World War. That the said Orville A. amstead, while a soldier in the United States Army, obtained from the United States Government a policy of life insurance in the sum of $10,000, and the said Olga G. Hamstead was named as beneficiary in said policy, and the said Orville A. Hamstead died while a soldier in the service of the United States in the year 1919. And that under the terms and provision of said policy of insurance the same was payable to the said Olga G. Hamstead in monthly installments of $57 per month. That during the time that the said defendant C. E. Hamstead was guardian of the said Olga G. Hamstead, he collected ·from the United States of America on said policy of insurance for his ward, the said Olga G. Hamstead, the total sum of $2642.15, and that he has only accounted to said ward for the sum of $600, and that he has failed to account for, and has misappropriated or converted to his own use the sum of $2042.15, funds and money belonging to his said ward, the said Olga G. Hamstead.

III. That on the 18th day of February, 1924, the complainant Bankers Trust Company was appointed guardian of the said Olga G. Hamstead by the county court of Knox county, Tennessee, and that said Bankers Trust Company qualified by executing bond in the penalty fixed by the court and ever since said date it has been, and now is, the duly appointed, qualified and acting guardian of the said Olga G. Hamstead. That the said Olga G. Hamstead is a minor nineteen years of age.

IV. That the defendant C. E. Hamstead as guardian of the said Olga G. Hamstead, has never made settlement as such guardian in the manner and form required by law, and that during the time he was guardian of the said Olga G. Hamstead he was frequently drunk, and was frequently arrested and confined in jail because of drunkenness.

V. That the defendants T. L. Peters and R. L. Peters were never discharged on the bond of C. E. Hamstead, guardian of Olga G. Hamstead. That on February 14, 1923, the following order was entered in the county court of Knox county, Tennessee: "R. L. Peters, one of the bondsmen of C. E. Hamstead, guardian of Olga G. Hamstead, came and tendered his resignation as such bondsman, which is accepted and he is released from further liability." The court finds, and doth order, adjudge and decree that the said R. L. Peters was not discharged by said order of the county court as surety on the bond of said C. E. Hamstead, guardian of Olga G. Hamstead, and that the said defendant R. L. Peters could only be discharged as surety on the bond of the said C. E. Hamstead in the manner and form provided by sections 5442-5443-5444-5445-5446 of Shannon's Code of Tennessee.

IV.   It is further ordered, adjudged and decreed by the court that the complainant Bankers Trust Company, guardian of Olga G. Hamstead have and recover of the defendants C. E. Hamstead, R. L. Peters and T. L. Peters, the sum of $2000, together with all of the costs of this cause, for which execution may issue.

The court finds that the complainant is entitled to recover the amount sued for, to-wit, $2042.15, but because the court finds that the defendant C. E. Hamstead is insolvent, and the penalty of his bond as guardian is $2000, a decree is awarded in favor of the complainant as above adjudged, for the sum of $2000, the penalty of said bond, of the said C. E. Hamstead.

To all of the foregoing decree the defendants C. E. Hamstead, T. L. Peters and R. L. Peters except and pray an appeal therefrom to the next term of the Court of Civil Appeals sitting at Knoxville, Tennessee, which appeal is allowed upon defendants giving bond as provided by law, and they are allowed thirty days within which to perfect their appeal.

All the defendants excepted to the decree and appealed therefrom, which was allowed on condition of filing bond, but only the defendant bondsmen filed the bond and perfected the appeal.   On application of the parties it was ordered that the original exhibits filed in the cause be sent up with the record in lieu of copies of the same.

The defendant Bondsmen, who perfected their appeal, have assigned errors as follows:

"1.   The court erred in decreeing that the guardian, Hamstead, had never made any settlement as provided by law."

"2.   The court erred in decreeing that the guardian, Hamstead, had only accounted for $600 of the money thus coming into his hands as such guardian."

"3.   The court erred in decreeing that R. L. Peters was never discharged as surety on said guardian bond."

"4.   The court erred in decreeing that the surety, T. L. Peters, was not discharged as surety on said bond."

"5.   The court erred in rendering a decree against the sureties, R. L. Peters and T. L. Peters for $2000 and costs."

The proof abundantly sustains the findings and decree of the chancellor.   The responsibility of a guardian security is not an office to be resigned.   Sections 5442, 5443, 5444, 5445 and 5446 of Shannon's Code, prescribe the mode or proceeding by which sureties may be released, and there is no other way.

These statutes provide that if a surety of such guardian conceives himself in danger of suffering by such suretyship and desires to be relieved, he may file his petition in writing in the county court of the county having cognizance of the estate or fund.   Upon such petition and notice the court may compel the principal to give other sufficient security or counter security, to be approved by the court,

or to deliver up the estate to the petitioner or such other person as may be directed, and may make such other orders and decrees for relief of petitioner and better security of the estate as may be just and equitable.

Should no person be found willing to accept the office and give the security required, the applicant surety shall qualify in the place of his principal, otherwise the liability will continue until a successor is appointed and qualified. Upon public or private application of any surety, if the principal consents to give a new bond with satisfactory security, it may be taken without further proceedings, with the same effect as if executed upon order.

On the execution of additional bond as required, or the qualification of a successor, the applicant security is exonerated from all liability accruing subsequently, but it does not affect previous liability, nor are any of the obligees who have not joined in such application discharged from any liability accruing after the filing of such additional bond; and the obligees who are not exonerated are liable to any person injured by a breach of such bonds in the same or separate actions.

In Note 3 under section 5447, numerous cases are digested and cited as holding that the proceedings for the release of sureties are summary in their character and are not to be extended by construction to embrace cases not provided for by the statute; and every fact necessary to confer jurisdiction and to authorize the court to act must appear by the record and be recited in the judgment or decree accepting the new and exonerating the original sureties. The sureties of guardians, executors or administrators and trustees or assignees for creditors are not released by proceedings in the county court for that purpose, unless the application is made in one of the modes designated by the statute, and a new bond with satisfactory sureties has been executed and accepted. Hickerson v. Price, 2 Heisk., 623, 626, 627; Johnson v. Johnson, 6 Heisk., 240-242; Hospital v. Fuqua, 1 Lea, 609, 610; McGlothlin v. Wyatt, 1 Lea, 719; Gower v. Shelton, 16 Lea, 655, 656; Jamison v. Cosby & Ferguson, 11 Humph., 273-277; Crawford v. Penn., 1 Swan, 388-389.

Under such conditions it can not be insisted that a mere resignation of a surety, followed by an order of the court releasing him, is effective. The order was simply void upon its face.

The first assignment of error is immaterial. The fact that the guardian Hamstead may have made a report for the first and the second year, and a partial settlement up to that time, which the statute required him to do up to that time, is not the final settlement contemplated upon his removal; and no final settlement was ever made, and any approval of his accounts that might have been evidenced in his report of the transactions up to said dates was rendered ineffectual and set aside in the order of his removal and the decree of the court

that he had wasted and misappropriated the funds, calling upon him also for settlement. At any rate we are satisfied that he was entitled to no more credits than he was allowed.

The application of the funds to the purchase of a house and lot, even though the deed to same was taken in the name of his ward, was a misappropriation and an unlawful and unauthorized investment of the funds.

"A guardian has no power, without the direction of a court of chancery, to convert realty into personalty, or vice versa, or to convert either into money, or vice versa." Singleton v. Love, 1 Head, 362.

"A guardian will not, ordinarily, be permitted to change the property of an infant, whether real or personal, into a different kind of property, or into money, and the court will not sanction such change unless where it is manifestly for the benefit of the infant, and it is the duty of the court to be satisfied of the alleged necessity of the change, etc." Morris v. Richardson, 11 Humph., 389.

The wisdom of this provision of the law is illustrated in this very case. The guardian seems to have invested $800 to $1000 of notes in his hands belonging to his ward in a house and lot at the price of $3570. There was a note outstanding for $1500 due in three years, the balance of the purchase price being payable monthly. The income of the ward from the insurance was $57.50 per month. Manifestly, therefore, it was not sufficient to carry this investment and pay for her proper board, clothing and education. It would perhaps have been sufficient had she worked for her board and sacrified her schooling, as she seems to have done in keeping house for her father, while she was being charged for her board. While paying for this house her chances for an education were nil, and much valuable time was being lost while her funds were thus employed. At the suit of the new guardian the chancery court determined that this was an unwise and unauthorized investment, and directed that the property be sold and she relieved of it. This was no ratification of its purchase, estopping the ward, but an express disapproval, and which should have warned the guardian and his bondsmen that, if they would protect themselves from this unlawful and unauthorized employment of the funds, they had better attend the biddings and see that the property was not sacrificed, for the sacrifice would involve their loss, and not the loss of the minor.

No injury was done the guardian or his bondsmen of which they can complain. It was the right and duty of the court to dispose of an investment that was standing in the way of her proper education and support, and the defendants can not complain, being responsible for its being foisted upon the estate.

Upon the whole, there is no merit in any of the assignments of error, and the same are overruled and the decree of the chancellor affirmed.

The complainant will therefore recover of the defendants and their sureties on the appeal bond the sum of two thousand dollars, the amount of the bond, with interest from the date of the decree, together with the costs of the cause.

Portrum and Thompson, JJ., concur.